UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN WALTERS, ET AL., | No. C-06-4138 SBA (JCS) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [Docket No. 20]** |
| DRONKANOKI, INC., ET AL., | |
| Defendant. | |

## I. INTRODUCTION

In this ERISA enforcement action, Plaintiffs bring a Motion for Default Judgment ("the Motion") seeking entry of default judgment, an order compelling Defendants to submit to an audit and, when the audit has been completed, an award of unpaid fringe benefit contributions, interest thereon and attorneys' fees and costs. Plaintiffs further seek an order compelling Defendants to timely report and pay all required monthly contributions. The Motion came on for hearing on February 9, 2007. Additional materials in support of the Motion were filed on February 15, 2007. For the reasons stated below, it is recommended that the Court GRANT Plaintiffs' Motion.

## II. BACKGROUND

Plaintiffs Ken Walters and John Bonilla are trustees of Plaintiff trust funds ("the Trust Funds").[1] The Trust Funds are employee benefit plans within the meaning of §§ 3(1) and (3) and

---

[1] The Trust Funds are: 1) Operating Engineers Health and Welfare Trust Fund for Northern California; 2) Pension Trust Fund for Operating Engineers; 3) Pensioned Operating Engineers Health and Welfare Fund; 4) Operating Engineers and Participating Employers Pre-Apprenticeship, Apprentice and Journeymen Affirmative Action Training Fund; and 5) Operating Engineers Vacation and Holiday Plan.

§ 502(d)(1) of ERISA, 29 U.S.C. § 1002(1) and (3) and § 1132(d)(1). Plaintiffs allege that Defendants Drankanoki Inc., Drankanoki, Inc. dba West Coast Consulting & Construction Services and West Coast Consulting and Construction Services (collectively "Dronkanoki") entered into a written collective bargaining agreement ("the Master Agreement") with the Operating Engineers Local Union No. 3. Complaint at 2; Declaration of Wayne E. McBride in Support of Motion for Default Judgment ("McBride Decl."), Ex. B (Master Agreement). Dronkanoki became bound by the Master Agreement when it signed the Independent Northern California Construction Agreement, on June 23, 2004. Complaint at 2; McBride Decl., Ex. A (Independent Agreement). The Independent Agreement expressly incorporates "all the provisions of the current Master Agreement." *Id.*, Section 2. The Master Agreement, in turn, requires employers to abide by the provisions of the trust agreements for the Trust Funds. McBride Decl., Ex. B (Master Agreement), Section 12.01.00.

Under the Master Agreement, employers are required to make contributions to the Trust Funds at a specified rate for each hour worked by employees covered under Master Agreement. *Id*. Contributions, as well as an Employer's Report listing hours worked by covered employees for the applicable period, are to be submitted by the 15th of the month following the month in which the work was done, and unpaid contributions become delinquent on the 25th of that month. *Id*. In the case of delinquent contributions, the Master Agreement provides for liquidated damages, which are the greater of $35.00 or 15% of the amount due and unpaid. *Id.*, Section 12.13.00. In addition, the Master Agreement provides for an award of interest at a rate of 12%, which begins accruing on the date the contribution becomes delinquent. *Id*. Where an employer defaults and the Trust Funds consult legal counsel or file a legal action to recover the unpaid contributions, the employer is also liable for "all reasonable expenses incurred by the Union and the Trust in the collection of [the contributions], including but not limited to, reasonable attorneys' fees, auditors' and accountants' fees, court costs and all other reasonable expenses incurred in connection with such suit or claim . . . ." *Id*., Section 12.13.02.

In addition to the requirements set forth in the Master Agreement, the Trust Agreements provide that contributing employers must "permit a certified public accountant appointed by the Board [of Trustees] to enter upon the premises of such employer during business hours, at all

2

reasonable time or times, and to examine and copy such books, records, papers or reports of such Contributing Employer as may be necessary to determine whether such Contributing Employer is making full and prompt payment of all sums required to be paid by him" to the Trust Fund. *See* McBride Decl., Ex. D (Pension Trust Fund for Operating Engineers, Trust Agreement), Section 6; Supplemental Declaration of Wayne E. McBride in Support of Motion for Default Judgment, Exs. A-D (relevant provisions of remaining trust agreements allowing audits).

In the Complaint, Plaintiffs allege that Dronkanoki has failed to submit Employer Reports and remit appropriate fringe benefit contributions. Complaint at 4-5. Plaintiffs further allege that they made two written requests for an audit, as provided under the Trust Agreements, on January 30, 2006, and February 6, 2006. *See* Complaint, Ex. C. These letters state that the audit would cover the period beginning June 1, 2004 through the date of inspection. *Id*. Defendants, however, "refused or neglected to allow the audit as requested." Complaint at 4. Accordingly, Plaintiffs sought an order under ERISA, 29 U.S.C. §§1132(a)(3) and (g)(2), compelling Dronkanoki to submit to an audit and, upon completion of the audit, awarding the unpaid contributions with interest thereon, liquidated damages, attorneys' fees and costs. Complaint at 5-7. Dronkanoki failed to answer or otherwise respond to the Complaint, and default was entered against it on September 19, 2006.[2]

Plaintiffs now bring a motion for default judgment. In the Motion, Plaintiffs assert that Dronkanoki failed to remit timely Employer Reports of Contributions, as well as the payments due with the reports. Declaration of Wayne E. McBride in Support of Motion for Default Judgment (McBride Decl."), ¶ 7. Further, beginning in January 2006, Dronkanoki failed to remit any contributions or Employer Reports of Contributions. *Id*. Although Plaintiffs provide specific amounts for unpaid contributions, liquidated damages and interest in the Motion, they are not requesting an award of these amounts at this time. Rather, they ask for attorneys' fees and costs and for an order compelling an audit to cover the period June 1, 2004, to the present. They further request that upon completion of the audit and accounting, Plaintiffs be permitted to amend the

---

[2] On October 27, 2006, Plaintiffs filed a Request to Set Aside Default. Subsequently, however, the request was withdrawn.

3

judgment to recover outstanding contributions for the period, liquidated damages and interest. Plaintiffs also ask for an order directing and permanently enjoining Defendant to timely submit all required monthly contribution reports and contributions due and owing by Defendants and for this Court to retain jurisdiction. Plaintiffs further assert that to date they have incurred attorneys' fees in the amount of $5,522.50 in their efforts to enforce Dronkanoki's obligations under the Trust Agreements. Lozano-Batista Decl., ¶ 6. They also state that they have incurred $523.60 in costs. *Id.*, ¶¶ 7-8.

### III. ANALYSIS

#### A. Standard Governing Default Judgment

Plaintiffs have applied for a default judgment in this action on the basis that Defendants have failed to appear after valid service. Under Federal Rule of Civil Procedure 55(b)(2), the court may enter a default judgment where the clerk, under Rule 55(a), has already entered the party's default based upon a failure to plead or otherwise defend the action. The district court's decision to enter a default judgment involves some discretion. *Lau Ah Yew v. Dulles*, 236 F.2d 415 (9th Cir. 1956) (affirming district court's denial of default judgment). The court is free to consider a wide range of factors in deciding whether to enter a default judgment, including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986); *see also* Wright & Miller, *Federal Practice and Procedure*, Civil § 2685.

Where a default judgment is deemed appropriate, the factual allegations of the complaint, except those relating to damages, are taken as true. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). So long as the allegations in the complaint are "well-pleaded," liability is established as to those allegations by the default. *Trans World Airlines Inc. v. Hughes*, 308 F. Supp. (D.C.N.Y. 1969), *modified on other grounds*, 449 F.2d 51, *rev'd on other grounds*, 409 U.S. 363 (1973).

Plaintiffs' claims are well-pleaded. Further, there is no evidence in the record that suggests that default judgment should not be entered. Therefore, liability is established and default judgment should be entered against Dronkanoki.

**B.    Requested Relief**

**1.    Sections 1132(a)(3) and (g)**

Once liability is established in a default situation, a plaintiff must then establish that the requested relief is appropriate. *Geddes*, 559 F.2d at 560. Under ERISA, a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). It is established that where an employer is bound by a collective bargaining agreement, the requirement that the employer submit to an audit is enforceable under ERISA, even if that requirement is found in a trust agreement incorporated in the collective bargaining agreement rather than in the collective bargaining agreement itself. *See Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491,1494 (9th Cir. 1990).

In addition, 29 U.S.C § 1132(g) provides for statutory damages where a multi-employer plan successfully sues under 29 U.S.C. § 1145 (providing that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargaining agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement"). A plan that obtains judgment in its favor in an action for unpaid contributions under § 1145 is entitled to:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of –

    (1)  interest on the unpaid contributions, or

    (2)  liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

5

29 U.S.C. § 1132(g)(2). *States, Southeast and Southwest Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 568 (1985).

### 2. Audit

Plaintiffs have provided written notice of their intent to conduct an audit, as required under the Trust Agreements. Further, their request is consistent with the relief requested in their Complaint. Therefore, the Court should order Dronkanoki to submit to an audit pursuant to 29 U.S.C. § 1132(a)(3).

### 3. Attorneys' Fees and Costs

Plaintiffs assert that to date they have incurred attorneys' fees in the amount of $5,522.50 in their efforts to enforce Dronkanoki's obligations under the Trust Agreements. Lozano-Batista Decl., ¶ 6. Having prevailed in this action for unpaid and late contributions, Plaintiffs are entitled to reasonable attorneys' fees and costs of the action. 29 U.S.C. § 1132(g)(2)(D).

#### a. Attorneys' Fees

In this Circuit, the starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *See Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). In calculating the lodestar, the Court must determine a reasonable rate and a reasonable number of hours for each attorney. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987).

Here, Plaintiffs seek $5,522.50 in attorneys' fees, for work by a paralegal who bills $90.00/hour and an attorney whose billing rate is $250.00 an hour. The Court finds that these rates, and the time billed, are reasonable, and recommends that $5,522.50 should be awarded.

#### b. Costs

Plaintiffs seek $523.60 for the following costs incurred in prosecuting this action: (1) $350.00 for the Clerk's filing fee; (2) $48.60 for messenger service to the U.S. District Court; (3) $125.00 for service of documents on Dronkanoki. Under Civil Local Rule 54-3, an award of costs may include the clerk's filing fee and fees for service of process "to extent reasonably required and actually incurred." The Court finds that the costs sought by Plaintiffs were reasonably required and actually incurred, and therefore recommends that these costs be awarded in full.

### 4. Injunctive Relief

Plaintiffs ask the Court to issue injunctive relief compelling Dronkanoki to timely submit Employer Reports of Contributions and required contributions in the future. In light of the evidence that Dronkanoki: 1) has failed to submit such reports and payments in a timely manner in the past; 2) has failed to submit them altogether beginning in 2006; and 3) has not responded to Plaintiffs' complaint in this action, such relief is appropriate. *See Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D 388, 393-394 (C.D. Cal. 2005) (holding that where plaintiffs sought same form of injunctive relief in their motion for default judgment as they had in their complaint, entry of permanent injunction was justified on basis of defendant's default and failure to respond to prior written notice).

## IV. CONCLUSION

For the reasons stated above, it is recommended that default judgment be GRANTED. Dronkanoki should be compelled to submit to an audit, consistent with the Trust Agreements, and an injunction should be entered requiring Dronkanoki to submit timely employer contributions and Employer Reports of Contributions in the future. Plaintiffs should be awarded $5,522.50 in fees and $523.60 in costs. Further, Plaintiffs should be permitted to file a motion to amend judgment after they have completed the audit and accounting. At that time, the Court will determine the amount of unpaid contributions, interest thereon and liquidated damages, as well as any additional attorneys' fees and costs that may be recoverable. The Court should retain jurisdiction pending completion of the audit and accounting and determination of the motion to amend. Plaintiffs should be asked to provide a form of order consistent with this Report and Recommendation to the district judge.

Dated: March 1, 2007

JOSEPH C. SPERO
United States Magistrate Judge